STATE *vs.* FRANK BEATTY.

1. It is not the sole purpose of the Act, relative to "BastardChildren," Rev. Code, Chap. 12, to require the putative father to indemnify the county, but likewise to maintain the child.

2. As to past maintenance, there is no difference between that and future maintenance, so far as the power of the Court is concerned.

3. When a person was charged with being the father of a bastard child, and gave bond for his appearance at the next term of the Court, and, before the term of the Court, the child died, held, that it was error in the Court to discharge such putative father upon payment of costs, and, withou making any order or re quiring him to give bond. What kind of order, should be made in such cases, is in the discretion of the Court. The statute seems to require *some order* in every case.

*State* v. *Harshaw,* 4 D. and B. 371, cited and approved.

This was a proceeding in bastardy, before Mitchell, Judge, at Fall Term 1871, of Catawba Superior Court.

The mother of the child had been examined before its birth, by a Justice of the Peace, and the defendant had been recog-

nized to appear at the next term of the Court. The examination and proceedings were admitted to be regular.

The defendant appeared and proved to the Court that the ·child was born alive, lived several days, but died before this term of the Court. Whereupon he moved to be discharged upon payment of costs. This motion was resisted by the Solicitor, who asked that the defendant be required to give bond to perform such orders as the Court might see proper to make and on failure to do so, that he be committed. The Court ordered that the defendant be discharged upon payment of costs. From which order the relator appealed.

*Attorney General* for the relator.
*J. M.* and *M. L. McCorkle* for the defendant.

RODMAN, J. The defendant was duly charged by a single woman with being the father of a child with which she was pregnant, and he entered into recognizance for his appearance at the Superior Court. On proof before the Court that the child had been born since the date of the recognizance, and had died after living a few days, the defendant moved to be discharged on payment of costs, which the Judge allowed and the State appealed. The only question is, whether the supposed father could lawfully have been charged with the maintenance of the child during its short and past life. We are told that it is a question of some practical importance, as such cases frequently occur and the Judges doubt about their power. It depends on the construction of sec. 4, chap. 12 of Rev. Code, entitled "Bastard Children." That section says that when any man shall be accused by a single woman with being the father of her bastard child, he shall be entitled to have an issue made up to try the paternity, and "if the jury shall find that the person accused is the father of such child or children, he shall stand charged with the maintenance thereof as the Court may order and shall give bond, &c., to perform said or-

der, and to indemnify the county, &c." If the sole purpose of the Act was to indemnify the county, it is clear that as it did not appear that the county had been or was likely to be damaged, the Court had no right after the putative father had admitted the paternity by declining to make up an issue and after proof of the child's death, to do anything more than to require him to pay the costs. But we think it equally clear that if the statute had the further purpose to impose on the father the maintenance of the child, then it was within the power, and it was the duty of the Court to require him to give a bond, and thereupon to make an order charging him with the past maintenance of the child, notwithstanding its death. The purpose of the statute must be gathered from its provisions. Sec. 1 requires every single woman pregnant or delivered of a bastard child to declare its father, whether the child is likely to become chargeable to the county or not. If she refuses to declare the father, then as there is no way to charge the father with the maintenance, she is required to give a bond only to indemnify the county. Section 4, which I have already cited says, the father shall stand charged with the maintenance of the child as the Court may order, and shall give bond to perform said order *and* to indemnify the county. Section 7 says, that when the father has been charged with the maintenance of the child, and neglects to perform the order, execution may issue against him, "*provided* that the party aggrieved by such non-payment shall apply for the same."

In considering these sections it seems to us that sec. 4 clearly contemplates that the father shall *both* maintain the child and indemnify the county from any expenses attending it of any sort whatever. And sec. 7 seems to suppose that there will be a party aggrieved by his failure to perform the order other than the county, which there could not be if his duty was confined to indemnity. It is said the mother may be rich and abundantly able to maintain the child. But the common law imposes no such legal liability on her, at least after the

child has passed the age of nurture, and the statute intended to impose that duty on the father, where it more properly belongs.

Then as to past maintenance. There is no distinction between that and future maintenance, as far as regards the power of the Court. Judge Ruffin in *State* v. *Harshaw,* 4 *D. and B.*, 371, distinctly recognizes the power of the Court to provide for past and future maintenance, as well as, for the indemnity of the county.

Indeed it is difficult to see how any proof of the death of the child could properly be received until after the defendant had given bond, and the question arose, as to what, the order of maintenance should be. Before giving bond, the only defense open under the Act is a denial of the paternity.

If the Judge had thought he had the power to require a bond and then declined to charge the defendant with past maintenance upon the ground that it was discretionary in him to do so, we should doubt, whether the exercise of the power, was discretionary.

Certainly, it was entirely in his discretion, what sort of an order of maintenance he should make; but, it seems, that the statute intends some order in every case. But, in this case, the Judge appears to have declined because he doubted his power. We think he erred. Judgment reversed, and the case remanded, to be proceeded in, according to law.

PER CURIAM.                    Judgment reversed.